**Ellen STORCK, Aaron Drew Storck, Courtney Drew, Dana Drew and Joshua Drew, Plaintiffs,**

**v.**

**SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Gary Rosenthal, Individually and as an Assistant County Attorney with the Suffolk County Attorney's Office, Arza Feldman, Individually and as the law guardian appointed for the infants Courtney, Dana and Joshua Storck, Andrea Mckenzie, Individually and as the law guardian appointed for the infant, Aaron Drew Storck, Heidi Hilton, Individually and as the law guardian appointed for the infant, Aaron Drew Storck, Vivien Misshula, Individually and as a Case Worker employed by the Suffolk County Department of Social Services, Mary Peabody, Individually and as a Case Worker employed by the Suffolk County Department of Social Services, Dr. Mayer Sagy, Individually and as the Chief of Pediatric Intensive Care Unit of Schneider's Childrens Hospital, Dr. Philip Lanzkowski, Individually and as Chief of Staff of Schneider's Childrens Hospital, Dr. Gerald Novack, Individually and as a member of Pediatric Neurology Staff of Schneider's Childrens Hospital, Dr. Laura Nimkoff, Individually and as a Resident of the Pediatric Intensive Care unit of Schneider's Childrens Hospital, Dr. Herbert Schreier, Individually and as a witness for the Suf-**

folk County Department of Social Services, and John Doe and all others as yet unidentified agents of the County of Suffolk, who have acted in violation of the rights of the plaintiffs herein, Defendants.

No. CV 97–2880.

United States District Court, E.D. New York.

Nov. 27, 2000.

Jeremiah B. McKenna, Staten Island, NY, for plaintiff.

Robert J. Cimino, Suffolk County Attorney by Arlene S. Zwilling, Assistant County Attorney, Hauppauge, NY, for defendant Gary Rosenthal.

Clausen Miller, P.C., Department of Social Services, Vivien Misshula and Mary Peabody by Andrew Laskin, New York City, for defendants Suffolk County.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a civil rights case the facts of which arise out of a 1992 Suffolk County Family Court petition charging Plaintiff Ellen Storck ("Plaintiff") with neglect of her son, Aaron Storck. The facts surrounding the neglect proceedings and the subsequent placements of Aaron Storck are discussed, in great detail, in the opinion of this court dated August 10, 1999, which ruled on the defendants' motions to dismiss Plaintiff's complaint (the "Dismissal Opinion"). Presently before the court are the motions of the defendants that remain in this lawsuit, for summary judgment. For the reasons set forth below, the motions for summary judgment are granted in part. All claims are dismissed except for Plaintiff's first cause of action. That cause of action will be the subject of briefing on the merits according to the schedule set forth below.

## BACKGROUND

I. *Factual Background and the Dismissal Opinion*

Familiarity with the Dismissal Opinion is assumed and the court will reiterate the facts only to the extent necessary for the disposition herein. Briefly stated, however, the 1992 neglect petition charged that Ellen Storck suffered from Munchausen Syndrome by Proxy ("MSP"), a psychological disorder in which a person fabricates

symptoms of illness in her child for the purpose of gaining the attention of medical personnel. As a manifestation of her MSP, Ms. Storck was alleged to have put Aaron Storck's health in danger on repeated occasions. When doctors treating Aaron suspected MSP, that fact was reported to appropriate officials and the neglect proceeding began.

As a result of a state court trial and extensive opinion, Aaron Storck was removed from the custody of Ellen Storck and was placed in foster care in Suffolk County. That placement was later changed and Aaron was placed in the care of relatives living in Ohio. Aaron Storck now resides with his mother in the state of Florida.

Plaintiffs' complaint alleged individual claims and claims of conspiracy pursuant to 42 U.S.C. §§ 1983 and 1985.[1] These claims sounded in an alleged deprivation, without due process of law, of Plaintiff's liberty interest in the custody of her children. Plaintiff originally named as defendants virtually every person (including law guardians and physician witnesses) involved in the family court proceedings regarding the custody of Aaron Storck. As a result of the Dismissal Opinion, Plaintiff's claims have been significantly reduced. Remaining as defendants are: (1) Gary Rosenthal, the Suffolk County Attorney charged with prosecuting the case against Ellen Storck; (2) the Suffolk County Department of Social Services, ("Suffolk DSS"); and (3) Vivien Misshula and Mary Peabody, case workers employed by Suffolk DSS (collectively with Suffolk DSS, the "Suffolk DSS Defendants").

In addition to reducing the number of defendants, the Dismissal Opinion reduced the number of claims. The factual claims remaining in this lawsuit follow.

### A. Claims Against Gary Rosenthal

The Dismissal Opinion disposed of several claims against Gary Rosenthal on the ground of absolute prosecutorial immunity. The narrow claims remaining against Rosenthal are: (1) that during a 1993 meeting (while Aaron Storck was in the care of Suffolk County foster parents) Rosenthal threatened Aaron with "real trouble" if he told his mother's attorney the truth about ill treatment he was receiving while in foster care, and (2) that Rosenthal improperly interfered with and acted to have Ellen Storck's welfare payments suspended.

### B. Claims Against the Suffolk DSS Defendants

Plaintiff's claims against Misshula and Peabody arise out of their roles as Suffolk DSS caseworkers assigned to Aaron Storck's case. Misshula was the first caseworker assigned to Aaron's case. Peabody became involved when custody was transferred to Ellen Storck's cousins residing in Ohio.

Plaintiff alleges that Misshula and Peabody failed to intervene or protect Aaron Storck from psychological abuse he allegedly suffered while in foster care in Suffolk County. Second, Plaintiff claims that Misshula and Peabody filed false reports concerning their interviews of Ellen Storck and her children so that Aaron Storck would not be returned to the custody of Ellen Storck.

Next, Plaintiff claims that the caseworkers withheld Aaron's Supplemental Security Income ("SSI") funds as well as funds received from Aaron's natural father and Medicaid funds. Such funds are alleged to have been properly payable to Aaron Storck's Ohio foster parents. In a related claim, Plaintiff alleges that Misshula and

---

1. This case was initiated in May 1997, by way of order to show cause seeking an order preventing the Suffolk County Department of Social Services from attempting to take Aaron back into state custody. Plaintiff attempted to remove state court neglect proceedings to this court. That application was denied by this court and, in an order dated June 5, 1998, the denial was upheld by the Court of Appeals for the Second Circuit.

Peabody "deceived" the Ohio Department of Children's Services regarding their receipt of SSI, support and Medicaid payments for Aaron, claiming that these funds had been received by Aaron's attorney.

Finally, Plaintiff alleges that Misshula and Peabody "harassed" Plaintiff's children by interfering with their rights to participate in school activities, obtaining a court order that the children could seek medical attention only by physicians approved by Suffolk DSS and by violating their right to maintain the privacy of their school records.

All actions of Suffolk DSS, Misshula and Peabody are alleged to have been taken in retaliation against Plaintiff for her resistance of the neglect proceedings.

### C. *FERPA Claim*

In addition to the claims referred to above, there remains in this case a claim alleged against Rosenthal, Misshula and Peabody pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232 ("FERPA"). This cause of action alleges that these defendants violated 20 U.S.C. § 1232(g)(6)(2), when Aaron's siblings' educational records were subpoenaed. These "unlawful subpoenas" are alleged to have deprived the Storck children of their "federally protected privacy rights to their educational and counseling records, humiliation, and interference with their education."

### DISCUSSION

### I. *Legal Principles*

### A. *Standards for Granting Motions For Summary Judgment*

A motion for summary judgment is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking

judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir. 1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of the substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

When a moving party demonstrates the absence of a genuine issue of fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Additionally, affidavits in support of or in opposition to summary judgment must be made on personal knowledge and set forth facts as would be admissible in evidence. *Id.*

Summary judgment is not defeated by vague assertions of unspecified disputed facts. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). Moreover, conclusory allegations are insufficient to defeat summary judgment. *See Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). With these standards in mind, the court turns to assess whether Plaintiff has created an issue of fact regarding the claims remaining herein.

### B. *The Basis of Each of Plaintiff's Civil Rights Claims*

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show a deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.

1993). As noted above, Ellen Storck claims the deprivation of her constitutionally protected liberty interest in the custody of her children, a right that is subject to due process protection. *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996); *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir.1977); *see Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Despite the parent's due process rights, a child may be taken from his parent's custody without a hearing where the child is threatened with immediate harm. *Gottlieb*, 84 F.3d at 518; *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir.1992); *Sundbye v. Ogunleye*, 3 F.Supp.2d 254, 264–65 (E.D.N.Y.1998). Even in such cases, however, the constitutional rights to notice and an opportunity to be heard are not eliminated, "but merely postponed." *Sundbye*, 3 F.Supp.2d at 265.

## II. *Disposition of Plaintiff's Remaining Claims*

### A. *Disposition of the Remaining Claims Against Rosenthal*

As noted above, the first claim that remains against Rosenthal is the claim that prior to a 1993 meeting with Aaron Storck, Rosenthal threatened Aaron with "real trouble" if Aaron disclosed to his mother's attorney the abuse that Aaron was suffering while in Suffolk County foster care. The second remaining claim is that Rosenthal "arranged the suspension" of Ellen Storck's welfare payments in retaliation for Storck's resistance to the removal of Aaron Storck from her custody.

#### 1. *The 1993 Meeting With Aaron Storck*

Rosenthal argues that any claim asserted by Plaintiff arising out of the 1993 meeting during which Aaron Storck was allegedly threatened by Rosenthal is barred by the three year statute of limitations applicable to civil rights actions. The court agrees. This case was commenced in 1997, four years after Rosenthal's alleged threats. In view of the fact that the statute of limitations governing civil rights actions is three years, *see Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir.1997); *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir.1995), Plaintiff's claim arising out of Rosenthal's alleged actions is time-barred.

■ It matters not, as argued by Plaintiff, that Aaron was a minor at the time of the 1993 meeting. While Aaron's infancy tolls any claim brought by Aaron, *see* CPLR § 208, it does not similarly toll the claim at issue here—Ellen Storck's claim that Rosenthal interfered and retaliated against her when she attempted to exercise her constitutionally protected right to custody of her child. Because Ellen Storck was not a minor at the time of the 1993 meeting, any claim arising out of that meeting was time-barred by the time this action was commenced.

■ Even if Ellen Storck's claim arising out of the 1993 incident was not time-barred, or if the claim were somehow construed as Aaron Storck's claim, it would nonetheless be subject to dismissal. Plaintiff, who is presumably in possession of evidence substantiating her claim (she is certainly in contact with her now sixteen year-old son) has submitted no evidence supporting her version of the events that allegedly transpired during the 1993 meeting. Noticeably missing from Plaintiff's submission is any affidavit, by Aaron Storck or anyone else, attesting to what occurred at the meeting where Aaron was allegedly threatened by Rosenthal. At this summary stage of the proceedings, Plaintiff may not rely on the allegations of her complaint. Instead, she must come forward with evidence supporting her claim. She has not. Under these circumstances, the claim is properly dismissed.

#### 2. *Alleged Wrongful Interference With Welfare Payments*

■ Documents regarding the claim that Rosenthal improperly interfered with Plaintiff's receipt of welfare funds have

been submitted and examined by the court. These documents establish no ill will on the part of Rosenthal, a good faith explanation for events that led to the temporary suspension of Ellen Storck's welfare benefits and no constitutional due process violation whatsoever.

In 1993, Ellen Storck appeared on the *Geraldo* television program to discuss her case. At the conclusion of the segment, information was flashed regarding an Ellen Storck "defense fund," asking that any donation to Ms. Storck be submitted to the fund.

Sometime thereafter, Rosenthal is alleged to have informed the Assets and Resources section of Suffolk DSS of the existence of the fund and the possibility that Ellen Storck was receiving income from the fund that would render her ineligible for welfare payments she had been receiving. Acting upon that information, Suffolk DSS launched an investigation as to the continuing eligibility of Ellen Storck for welfare funds.

Correspondence that is presently before the court was exchanged between Suffolk DSS and Ellen Storck's then-attorney. The substance of this correspondence is, essentially, Storck's attorney's accusation that Suffolk DSS was using the request for information as a litigation tactic to further the County's interests in connection with the ongoing custody proceeding involving Ellen Storck. This allegation was vehemently denied by Suffolk DSS, which took the position that it was merely investigating a possible source of income that might invalidate Ellen Storck's right to welfare payments.

Ellen Storck's welfare payments were, indeed, suspended because of the continuing failure of her attorney to provide detailed information regarding the defense fund. Ultimately, however, the requested information was provided to Suffolk DSS and the welfare payments were resumed.

The documents submitted in opposition to Rosenthal's summary judgment motion establish the foregoing facts and no other. There is no evidence of any malicious or unreasonable intent on the part of Rosenthal to take action to have Ellen Storck's welfare payments improperly suspended. Moreover, although such payments were suspended, that suspension was for a short period only and the payments were reinstated once Ms. Storck's attorney provided the information requested by Suffolk DSS. There is absolutely no evidence that the acts of Rosenthal or any Suffolk DSS official deprived Ms. Storck of any payments to which she was entitled without due process of law. Under these circumstances, the court dismisses any such claim.

### B. *Disposition of The Remaining Claims Against the Suffolk DSS Defendants*

As noted above, the claims remaining against Suffolk DSS, Misshula and Peabody are: (1) the caseworkers failed to protect Aaron from abuse while in Suffolk County foster care; (2) the caseworkers filed false reports concerning their interviews with Ellen Storck; (3) Aaron Storck's SSI payments were illegally withheld and the relevant state agency in Ohio was deceived regarding such payments as well as Medicaid and support payments; and (4) the caseworkers harassed the Storck children in connection with their schooling and participation in extracurricular activities. The court turns to discuss the viability of each claim.

#### 1. *Amendment of Answer*

Before discussing the viability of Plaintiff's claims against the Suffolk DSS Defendants, the court addresses the request of these defendants to amend their answer. This request arises out of what was obviously a careless typographical error that led these defendants to admit factual allegations that they have obviously denied throughout these proceedings. Allowing amendment of the answer at this time would not prejudice Plaintiffs in any way; while denying leave to amend would create

an injustice to the DSS Defendants. Accordingly, the court grants the DSS Defendants the right to amend their answer to deny the factual allegations which have been denied throughout the course of these proceedings.

Allowing amendment puts this case in the following factual posture. The DSS Defendants: (1) deny that they failed to intervene or protect Aaron Storck from abuse suffered while in foster care; (2) deny that they deliberately filed false reports concerning interviews of Plaintiff and her children; (3) deny that they withheld SSI and other funds from Aaron Storck's Ohio foster parents; (4) deny that they harassed Plaintiff's children by ordering school authorities to prohibit these children from engaging in normal school activities and violated the childrens' rights to privacy; and (5) deny that they took the aforementioned actions with the intent of retaliating against Plaintiff for resisting the neglect proceedings.

### 2. Affidavits of Misshula and Peabody

In addition to the denials contained in the amended answer, Misshula and Peabody have submitted factually detailed affidavits in support of their motion for summary judgment. Misshula's affidavit states that she was the caseworker assigned to the Storck case from the beginning of the neglect proceeding in 1992 until May 31, 1994. At that time, she asserts, the case was transferred to Peabody. Misshula states that at no time during her representation of Aaron Storck did she ever request that any particular action be taken either with respect to Ellen Storck or with respect to the custody of Aaron Storck. Instead, Misshula states, she followed the directions of the Family Court judge as they were communicated to her.

Further, Misshula states that she never became aware of any substantiated report that Aaron Storck was the victim of any type of abuse while in foster care in Suffolk County. To the extent that any such claim was made, it was investigated and disposed of in connection with the ongoing Family Court proceedings. Misshula has no knowledge of any other claim. Misshula vehemently denies filing any false report in connection with proceedings involving Aaron Storck, or indeed, with any matter with which she has been involved.

With respect to the issue of suspension of payments to Aaron or Ellen Storck when Aaron was in the care of cousins in Ohio, Misshula points out that these allegations concern a time when she was no longer assigned to the Storck matter. Accordingly, she has no knowledge of any such activities and, indeed, could have no control over such activities if they did, in fact, occur.

Regarding allegations of interference with the education of the Storck children, Misshula states that she never "ordered" school authorities to take any particular course of action. At most, she conveyed to orders of the Family Court judge assigned to the matter to school authorities. Finally, Misshula denies ever having seen, touched or served any subpoena to school officials for the records of any of the Storck children.

Like Misshula, Peabody has submitted a factually detailed affidavit in support of the DSS Defendants' motion for summary judgment. Peabody states that she was assigned to the Storck case on May 31, 1994, when she took over the responsibilities of Misshula. Like Misshula, Peabody attests that she never learned that Aaron Storck was the victim of abuse in any foster care situation in which he was placed. Peabody denies having issued any false report with respect to the Storck case. Peabody states that she never took any position before the Family Court, but instead, only followed the directives flowing from that court.

Although Peabody was the DSS caseworker assigned to the Storck case when Aaron was placed in the care of his Ohio cousins, she denies either withholding funds from the Ohio foster parents or di-

recting that such funds be withheld. Peabody denies ordering school officials to take any course of action with respect to the school activities of the Storck children. Finally, with respect to the alleged illegal subpoenaing of the Storck childrens' school records, Peabody, like Misshula, denies ever having seen, touched or served any such subpoena.

### 3. Plaintiff's Response to Summary Judgment and Disposition of the Claims Against the DSS Defendants

In support of her request that summary judgment be denied, Ellen Storck submits her personal affidavit as well as various documents which are described below. Ellen Storck's affidavit relies on the pleading error referred to above and argues that the DSS Defendants have not denied the material allegations of the complaint. In view of the fact that the court has allowed amendment of the answer, the court will not consider statements concerning the mistaken pleading when determining whether Plaintiff has set forth a question of fact sufficient to defeat summary judgment. Instead, the court considers the balance of Ellen Storck's affidavit to determine whether a question of fact has been presented that is sufficient to defeat summary judgment.

### a. Claim that Misshula Remained Involved in the Storck Case After May 31, 1994

In response to the Misshula affidavit, Plaintiff has submitted documents showing that Misshula remained involved in the Storck case after May 31, 1994. Examination of these documents does, indeed, create an issue of fact as to whether Misshula turned the Storck matter over to Peabody in May of 1994, or whether she retained some responsibility over the case even after Peabody's assignment. This fact alone, however, is not an issue of fact that is material to the proceedings herein. Thus, even if the court assumes Misshula's continuing responsibility over the Storck

matter after May of 1994, this assumption does not create an issue of fact regarding the serious accusations contained in the complaint. The court turns, then to consider whether Plaintiff has submitted evidence, documentary or otherwise, to create the requisite issue of fact.

### b. Claim That Caseworkers Ignored Aaron Storck's Alleged Abuse While in Suffolk County Foster Care

Plaintiff's proffered substantiation for the claims that caseworkers ignored Aaron Storck's abuse in Suffolk County foster care and that the DSS Defendants interfered with the schooling of the Storck children comes in the form of Ellen Storck's assertions as to what Aaron Storck and his siblings would say about the events surrounding the neglect proceeding. Although Plaintiff alludes to the testimony that her children will offer at trial, she does not offer any of that testimony in affidavit form at this time. Plaintiff states that her now sixteen year old son, Aaron "should be allowed to testify" regarding his treatment in foster care. However, she fails to submit an affidavit setting forth his testimony. Similarly, Plaintiff states that her son Joshua and her daughter Dana will testify that they stopped attending school because of the interference of Misshula and Peabody. Neither Joshua nor Dana, however, have submitted affidavits in response to the summary judgment motion.

As noted above, Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits submitted in opposition to motions for summary judgment are to be made on personal knowledge and are to set forth facts in admissible form. *See* Fed.R.Civ.P. 56(e). Hearsay assertions that would not be admissible at trial are insufficient to defeat a motion for summary judgment. *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 160 (2d Cir.1999); *Waller v. United States Postal Service,* 2000 WL 516544 *4 (E.D.N.Y. March 7, 2000); *see Booth v.*

*Wilson,* 1996 WL 735558 *3 (S.D.N.Y. December 23, 1996) (noting that it is "well-established" that hearsay affidavits are insufficient to satisfy the requirements of Rule 56(e)). In view of the requirements of Rule 56(e), the court cannot rely on Ellen Storck's assertions regarding the testimony of others to defeat summary judgment.

Aside from the now-discredited admissions in the answer and assertions as to the testimony of others, Ellen Storck's affidavit relies on certain documents to create an issue of fact. The court considers each to determine if summary judgment should be denied.

■ First, Plaintiff submits the petition submitted to the New York State Family Court in support of a request to transfer custody of Aaron Storck from Suffolk County foster care to the custody of his relatives in Ohio. The petition submitted by Plaintiff's attorney in that proceeding states, on information and belief, that Aaron was not treated well while in Suffolk County foster care. The petition accuses Aaron's then-foster parents of, *inter alia,* failing to properly supervise Aaron and failing to provide proper medical and dental care. The state court ultimately granted the petition and Aaron was transferred to the care of his Ohio cousins. The granting of the petition does not compel a finding that every fact stated therein was true or that Misshula and Peabody ignored Aaron's "abuse" while in Suffolk County. Importantly, the petition says nothing about the knowledge of Aaron's caseworkers or their failure to protect Aaron. Even if it did, it would not constitute the type of admissible evidence necessary to defeat summary judgment. Fed.R.Civ.P. 56(e). In light of the foregoing, the court dismisses any claim that the Suffolk DSS Defendants failed to protect Aaron Storck from abuse while in Suffolk County foster care.

c.  *Claims of Filing of False Reports and Improper Withholding of Funds From the Ohio Foster Parents*

In support of her claims, Plaintiff submits a log of "daily activities" compiled by Aaron's Ohio social worker. While entries in the log show disagreement between the New York and Ohio caseworkers regarding their impressions of Aaron and Ellen Storck, they do not support any of the claims of false filings contained in the complaint and therefore do not defeat summary judgment. Similarly, these documents reveal confusion regarding the receipt of Aaron's SSI and other funds. They do not, however, support the notion that the Suffolk DSS caseworkers wrongfully, and in violation of due process, withheld funds from the Ohio family caring for Aaron.

d.  *Claims of Interference With the Schooling of Aaron Storck's Siblings*

■ No document submitted by Plaintiff supports the notion that the caseworkers improperly interfered with the schooling of Ellen Storck's children. In support of this claim, Plaintiff has submitted a letter authored by Dana's high school guidance counselor. While this letter certainly supports the notion that the neglect proceeding and the subsequent intervention of social services left Dana extremely disturbed, there is no indication that this intervention was improper or unwarranted. Indeed, in view of the Family Court finding that Ellen Storck was guilty of neglecting Aaron Storck, this court cannot fault Suffolk DSS for inquiring into the well being of Ellen Storck's other children, even if such inquiry intruded upon their private lives.

Moreover, there is no indication in the letter that any person from Suffolk DSS required that Dana stop participating in any extracurricular activity, including sports. Indeed, one of the events that the school guidance counselor attributes to Dana's academic downfall was the airing of a television program regarding Ellen

Storck's case—an event brought about by Ellen Storck.

\*　　\*　　\*　　\*　　\*　　\*

In sum, upon consideration of the affidavit of Ellen Storck and the documents annexed thereto, the court holds that Plaintiff has created no issue of fact to support her claims against the caseworkers. There is simply no evidence that Misshula or Peabody engaged in the unprofessional and scheming conduct with which they have been charged. The court dismisses the claims alleging such conduct.

e. *Liability of Suffolk DSS*

■ Plaintiff made clear at her deposition that the only basis upon which she was attempting to hold Suffolk DSS liable for the acts of Misshula and Peabody was on the ground of respondeat superior. Such liability cannot form the basis of a civil rights claim. *See Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In any event, Plaintiff's failure to create an issue of fact regarding her claims against Misshula and Peabody dictates dismissal of her claim against Suffolk DSS, especially in light of the fact that there is absolutely no evidence of any unconstitutional custom or practice.

C. *Disposition of FERPA Claims*

Plaintiff alleges that all defendants violated the rights of Aaron Storck's siblings pursuant to the Family Educational Rights and Privacy Act ("FERPA"). According to Plaintiff, FERPA was violated when school records of Aaron's siblings were subpoenaed without the knowledge or consent of Ellen Storck.

FERPA is a federal statute that requires educational institutions ·receiving federal funds to allow parents of students attending these schools access to their children's education records. *See* 20 U.S.C. § 1232g(a)(1)(A). One section of FERPA, 20 U.S.C. § 1232g(b)(2), prohibits educational institutions that receive federal funds from releasing educational information unless, *inter alia,* such information is furnished in compliance with a lawfully issued subpoena, and the parents are made aware of the subpoena prior to disclosure.

■ As noted in the Dismissal Opinion, FERPA, which does not create a private right of action, has been held to create an interest that may be vindicated in the context of a Section 1983 cause of action. *Fay v. South Colonie Central School District,* 802 F.2d 21, 33 (2d Cir. 1986). In the context of such an action, the doctrine of qualified immunity may shield a defendant from liability. *See Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996) (government employees sued in their individual capacities arising out of performance of discretionary functions are entitled to qualified immunity). Qualified immunity will defeat a plaintiff's claim if it was objectively reasonable for the defendant to believe that his actions did not violate a clearly established federally protected right. *Id.; see Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ The court has considered the facts surrounding Plaintiff's FERPA claim and holds that the claim must be dismissed. By its express terms, FERPA applies to educational institutions. To the extent that Plaintiff has any claim pursuant to this statute, it would be a claim against the school that allegedly unlawfully provided records, not against the party requesting such records. Even if the court were to accept Plaintiff's strained reading of FERPA, the claim would nonetheless be properly dismissed. It would certainly be objectively reasonable for any defendant herein to believe that his or her actions did not violate any clearly established federal right under FERPA. At the time the subpoenas were issued and, indeed, to date, no court has recognized the right advocated by Plaintiff. Under these cir-

cumstances, defendants are, at the very least, entitled to qualified immunity barring Plaintiff's FERPA claim. For the foregoing reasons, the court dismisses any and all claims brought pursuant to FERPA.

D. *The Alleged Unconstitutionality of Section 1072 of the Family Court Act*

Finally, the court turns to the final cause of action that has not been addressed on the merits. That is, Plaintiff's first cause of action which seeks a declaratory judgment that Section 1072 of Article 10 of the New York Family Court Act, pursuant to which Ellen Storck was held in contempt of the family court's orders in 1996, is unconstitutional. The claim of unconstitutionality rests on the argument that this statute fails to provide the full complement of constitutional protections to which a criminal defendant is entitled and therefore runs afoul of the Fifth and Fourteenth Amendments to the Constitution.

The Dismissal Opinion stated that this claim should be the subject of a motion to dismiss. The only argument raised by defendants in the context of their summary judgment motion was that the claim must be dismissed because Plaintiff failed to put the New York State Attorney General on notice that the constitutionality of the statute was raised herein. In response, Plaintiff has submitted documentation establishing that such notice was, indeed, provided.

No party has bothered to address the issue of the constitutionality of the statute on the merits. In view of the fact that this is the only claim that now remains in this lawsuit, the court issues the following order. If Plaintiff wishes to pursue this sole remaining claim a brief in support of the claim shall be submitted to the court within twenty days of the date of this order. Defendants shall thereafter have twenty days in which to respond to Plaintiff's argument. Thereafter, Plaintiff will have

ten days in which to submit any reply papers.

If Plaintiff fails to submit an appropriate memorandum of law within the time specified herein, the court will deem this cause of action to have been abandoned and it will be dismissed. At that time, this matter will be dismissed and closed, in its entirety. In view of the fact that this case has been pending since 1997, there has been more than enough time to articulate the basis for legal arguments. Accordingly, there will be no extensions of time.

*CONCLUSION*

For the foregoing reasons, the court grants defendants' motions for summary judgment and dismisses all causes of action except for Plaintiff's first cause of action. With respect to that claim, the parties are directed to submit briefs in accordance with the timetable set forth herein.

SO ORDERED.